J-S46019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSIE J. SLEASMAN | : | No. 794 WDA 2025 |

Appeal from the Order Entered June 4, 2025
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000021-2025

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:          **FILED:  June 30, 2026**

The Commonwealth appeals from the order granting, in part, the pre-trial *habeas corpus* petition filed by Appellee Jessie J. Sleasman and dismissing the charges for terroristic threats and attempted criminal homicide.  The Commonwealth argues that the trial court erred in concluding that the Commonwealth failed to present a *prima facie* case on those charges. Following our review, we reverse the portion of the order dismissing the terroristic threats and attempted criminal homicide charges and remand for further proceedings.

Briefly, Appellee was charged with multiple offenses after he stabbed Daniel Sleasman (the Victim) with a knife during an altercation.  Specifically, the trial court explained:

> On November 27, 2024, Pennsylvania State Trooper Shawn Vigne was dispatched to UPMC Somerset for a reported assault.  Theresa Sleasman, wife of [the Victim], reported that her husband had

been stabbed approximately 45 minutes earlier by a relative, [Appellee,] at a garage in Acosta, Somerset County. Trooper Vigne viewed the Victim as he was being treated in the hospital for a wound in the Victim's right lower chest. The trooper averred in his probable cause affidavit that a significant laceration was bandaged, and several layers of clothing were heavily covered in blood. A large cut was visible on the thick winter jacket with the Victim's belongings. The Victim advised the trooper that he had stopped at a garage in Jenner Township to inquire about selling a vehicle when [Appellee] allegedly started arguing with him. The Victim stated that [Appellee] struck him in the chest and he later realized he was bleeding, having been stabbed through his outer jacket, a sweatshirt, and a t-shirt. The argument was subsequently broken up by a third party.

Trial Ct. Op., 8/26/25, at 1-2 (footnote and citation omitted and some formatting altered).

After the charges were held for court at a preliminary hearing, the trial court further explained:

The Commonwealth filed an information on February 12, 2025, alleging:

Count 1: Aggravated Assault - Attempt to cause or causes serious bodily injury with a deadly weapon (F2) (18 Pa.C.S. § 2702(a)(4);

Count 2: Simple assault (M2) 18 Pa.C.S. § 2701(a)(1);

Count 3: Harassment (physical contact) (S) (18 Pa.C.S. § 2709(a)(1));

Count 4: Terroristic threats with intent to terrorize another (M1) (18 Pa.C.S. § 2706(a)(1));

Count 5: Recklessly endangering another person (M2) (18 Pa.C.S. § 2705);

Count 6: Possession of instrument of crime (M1) (18 Pa.C.S. § 907(a));

Count 7: Criminal attempt - criminal homicide (F1) (18 Pa.C.S. § 901(a)).

[Appellee] filed a pretrial omnibus motion for relief on April 11, 2025.  [A] hearing was conducted on June 4, 2024.

*Id.* at 2 (some formatting altered).

The trial court summarized the evidence presented at the *habeas* hearing as follows:

[The Victim] testified that on November 27, 2024, he went to Mr. Wright's place with a title of a car to sell it.  He stated that when he arrived, "I got out of my truck, walked around to the garage, and Jessie come out and into my face."  "He was out in the garage as far as I seen."  "He was in the garage, I was outside the garage; and he come out after me."  N.T. [*Habeas* Hr'g, 6/4/25, at] 6.  The Victim stated that [Appellee] was "Comin' at me to fight."  *Id.*  "[H]e hit me in my chest.  I thought he hit me."  *Id.*[ at ]7.  The Victim confirmed that he first thought he was punched.  *Id.*[ at ]13.  He didn't see anything in [Appellee's] hand.  The garage owner came out of the garage and broke up the fight.  *Id.*  The Victim got back in his truck and noticed there was a rip in his Carhartt jacket.  The Victim called his wife to go to the hospital with him because he thought he might have been stabbed, although he hadn't opened his jacket or sweatshirt to look.  *Id.*[ at ]9.  The Victim testified that he was treated as an outpatient for a stab wound.  *Id.*[ at ]10.  He lifted his shirt during his testimony to show the scar.  The court estimated the scar to measure approximately three inches long.  *Id.*[ at ]11.  The original wound, according to the medical records, was a "linear laceration in the right upper quadrant just superficial to the inferior costal margin.  It measured approximately 5 cm. in total length and approximately 1 cm. deep."  Cwwlth. Exh. 1, p. 3.

When recalled to the stand at the end of the hearing, the Victim was asked:

Q: [D]o you remember any statements [Appellee] made to you on the day of the stabbing?

A: When I left, when I was leaving, I was walking to my truck and he was inside the garage.  He said, "Yeah that's what rats get."

Q: Did he say anything else?

A: That's just what rats get.

*Id.*[ at ]42-43.

Raymond Wright testified that he owned a garage in Jenner Township. Both the Victim and [Appellee] were there on November 27, 2024. He testified that when the Victim pulled in the driveway, [Appellee] was in the garage and [Appellee] came out. "They had an argument there and that was it. That's all I knew of. They was hollerin', and they were standin' in the yard, and I went and broke it up, and he drove away." *Id.*[ at ]18. "They was close together, yes. Nose to nose." *Id.*[ at ]19. "I don't know what was said. You could hear something, but I don't know what it was." [*Id.*].

Mr. Wright stated he was six to seven feet away before he broke up the fight by grabbing [Appellee's] arm to move him back, stating "No fightin' at the garage." *Id.*[ at ]20, 21. "And they both said sorry." *Id.*[ at ]21. He didn't see a knife. *Id.*[ at ]20.

Pennsylvania State Trooper Shawn Vigne testified that on arrival at the hospital, the Victim's wound was bandaged.

> "The bleeding was controlled, but he was heavily sedated. I tried to ask him what had happened, but he was - he couldn't form a coherent sentence because of all of the medication that they had given him at that time.
>
> I observed a hospital property bag on the floor with his winter coat, hooded sweatshirt, and T-shirt heavily soaked in blood. Looking at it, I could see the jacket had a clear slice in that general area where his wound was being treated."

*Id.*[ at ]33.

Trooper Vigne testified that when [Appellee] was interviewed, he admitted that he was at the garage and argued with the Victim and that Raymond Wright broke it up. He said they had past disagreements about a truck. He denied stabbing or touching the Victim.

Trooper Vigne did not examine the Victim's truck, and when visiting the Wright garage, he did not see any blood near the garage. He confirmed that Mr. Wright didn't physically see the knife, "if there was one." *Id.*[ at ]39.

Trial Ct. Op. at 3-4 (footnotes omitted and some formatting altered).

Ultimately, the trial court issued an order granting Appellee's petition to dismiss the charges for terroristic threats and attempted criminal homicide, but denying the petition with respect to the remaining charges, including aggravated assault. The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing the Commonwealth's claims.

On appeal, the Commonwealth raises the following claim for review:

> Whether the [trial] court erred by dismissing the charges of terroristic threat and attempted homicide for a lack of *prima facie* evidence where . . . Appellee used a deadly weapon on a vital part of the the Victim's body and told the Victim "[T]hat's what rats get" and where the Victim passed out as a result of blood loss.

Commonwealth's Brief at 3 (some formatting altered).

The Commonwealth argues that the trial court erred in dismissing the terroristic threats charge based on its conclusion that "the [v]ictim was not upset or distraught after [Appellee] shouted [the] threat at him." *Id.* at 8. In support, the Commonwealth explains that "whether a victim believes that the threat can be carried out is not an element of the offense of terroristic threats. Therefore, a victim's reaction to the threat is not considered when evaluating, particularly on a *prima facie* level, whether the Commonwealth has offered *prima facie* evidence." *Id.* (some formatting altered).

With respect to the charge for attempted criminal homicide, the Commonwealth notes that the trial court found sufficient *prima facie* evidence

to support Appellee's charge for aggravated assault – attempt to cause or causes serious bodily injury with a deadly weapon. *Id.* at 9. Accordingly, the Commonwealth argues that "it is uncontroverted that a deadly weapon was used by" Appellee. *See id.* Therefore, "the only question regarding specific intent is whether the deadly weapon was used on a vital body part." *Id.* at 9-10. The Commonwealth argues that the Victim was stabbed in the upper right quadrant of his abdomen, which is a vital part of the body. *Id.* at 10-11 (citing *Commonwealth v. Briggs*, 12 A.3d 291, 307 (Pa. 2011) (stating that "[t]he chest and abdomen house the human body's chief circulatory and digestive organs, as well as a network of vital arteries and veins which supply them and, thus, are vital areas of the body")).

"A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." *Commonwealth v. Carper*, 172 A.3d 613, 620 (Pa. Super. 2017) (citation omitted). The *prima facie* hurdle is less demanding than the Commonwealth's burden at trial of proving guilt beyond a reasonable doubt. *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991). "[A] *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Perez*, 249 A.3d 1092, 1102 (Pa. 2021). Additionally, "the evidence need only be such that, if presented at trial and accepted as true, the judge would

be warranted in permitting the case to be decided by the jury." *Id.* (citation omitted).

"We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth." *Commonwealth v. Dantzler*, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*). Whether the Commonwealth presents a *prima facie* case is a question of law, therefore our scope of review is plenary. *See id.* at 1112. In the context of a pretrial *habeas corpus* motion, the Commonwealth may meet its burden with "the evidence presented at the preliminary hearing and also may submit additional proof." *Id*. (citation omitted).

A person commits the crime of terroristic threats if that individual "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). "[T]he term 'communicates' means conveys in person or by written or electronic means. . . ." 18 Pa.C.S. § 2706(e). Moreover, "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000) (citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Id.* (citation omitted).

Regarding the crime of attempted murder, this Court has stated:

Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S. § 2502(a). . . . In sum, attempted murder is composed of two primary elements. The *mens rea* element of the offense is specific intent to kill, which is identical to the *mens rea* element of murder in the first degree. The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

*Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (footnote and some citations omitted; formatting altered). "A jury may infer the specific intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Anderson*, 323 A.3d 744, 753 (Pa. 2024). Further, this Court has held that both the chest and the abdomen are 'vital' parts of a person's body. *See Commonwealth v. Sepulveda*, 855 A.2d 783, 789 (Pa. 2004) (noting that the victim was shot in the abdomen, a vital part of his body); *Commonwealth v. Drumheller*, 808 A.2d 893, 910-911 (Pa. 2002) (stating that the torso may be considered a vital part of the body). As we have noted, our Supreme Court in *Briggs* has concluded that the chest and abdomen contain primary circulatory and digestive networks of vital organs, arteries and veins and are therefore vital parts of the body. *See Briggs*, 12 A. 3d at 307.

Here, the trial court explained:

Relative to the dismissal of the terroristic threats charge the court stated on the record:

The only threat to which there has been credible evidence is that [Appellee] called the Victim -- or said, "That's what rats get." There was no other testimony about any other

- 8 -

statements made between [Appellee] and the Victim that would rise to the level of a terroristic threat.

Even viewing this statement and its reasonable inferences in the light most favorable to the Commonwealth, it does not fulfill the elements of the terroristic threats statute . . . The statute requires an intent to terrorize. [The Victim] did not articulate that being called a rat - *after* the alleged stabbing - caused him any fear during his testimony. [Appellee] was back inside the garage when he uttered the statement and was no longer nose-to-nose with the Victim. The court heard no evidence that Victim understood [Appellee's] statement as a serious expression of intent to terrorize him. He did not call the police. He was calm enough to apologize to Mr. Wright for being involved in the disturbance - as did [Appellee] - and then drove away. Additionally, the Commonwealth presented no evidence of a threat or words spoken by the [Appellee] to commit a crime of violence.

Trial Ct. Op. at 6 (some formatting altered).

With respect to the attempted murder charge, the trial court explained:

The court is unconvinced that the right upper quadrant constitutes a vital organ. The court is not persuaded by the Commonwealth's reference to [] **Hanibel**, a death penalty case, as authority that the chest is a vital organ. The Victim was not struck in the chest but in the lower part of the torso. **See Commonwealth v. Hanible**, 30 A.3d 426 (Pa. 2011).

**Id.** at 7 n.5.

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the trial court erred in granting Appellee's motion to dismiss the charges for both terroristic threats and attempted criminal homicide. **See Dantzler**, 135 A.3d at 1111-12.

As to the attempted criminal homicide charge, the medical records show that the Victim's wound was in the upper right quadrant at the lower edge of the chest. **See** N.T. Habeas Hr'g, 6/4/25, at 45; **see also** Commonwealth

- 9 -

Brief at 10. In sum, we agree with the Commonwealth that it proved a *prima facie* case for the charge of attempted criminal homicide by establishing Appellee had the specific intent to commit homicide, body and took a substantial step toward that outcome based on Appellee's use of a deadly weapon, a knife, to stab the Victim's abdomen, a vital part of the Victim's body. Further, the Victim suffered substantial blood loss, lost consciousness and was hospitalized. *See Anderson*, 323 A.3d at 753; *see also Sepulveda*, 855 A.2d at 789; *Drumheller*, 808 A.2d at 910-911; *Briggs*, 12 A. 3d at 307. Therefore, the trial court erred in concluding that there was insufficient evidence to demonstrate Appellee acted with the specific intent to kill with respect to the attempted criminal homicide charge.

As to the terroristic threats charge, in its Rule 1925(a) opinion, the trial court concluded that it heard no evidence that the Victim understood Appellant's statement as a serious expression of intent to terrorize him. *See* Trial Ct. Op. at 6. Therefore, no threat was established and the Commonwealth failed to prove intent and did not meet its burden to prove a *prima facie* case for terroristic threats. *See id.* However, whether the Victim believes that the threat can be carried out is not an element of the offense of terroristic threats. *See Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003); *see also Fenton*, 750 A.2d at 865 (stating that "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime" and that "the harm sought to be prevented by the statute is the psychological distress that follows

from an invasion of another's sense of personal security"). Viewing the totality of the circumstances, it is abundantly clear that Appellant's statement, "that's what rats get," was intended to terrorize the Victim given that Appellant also rushed him and stabbed him with a knife in the chest and abdomen, vital areas of the body, causing substantial blood loss and subsequent hospitalization. Therefore, the trial court erred in dismissing the terrorist threats charge.

For these reasons, we reverse the portion of the order dismissing the terroristic threats and attempted criminal homicide charges and remand for further proceedings.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/30/2026